INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Bob Gardner, In his capacity as Commissioner of the Indiana High School Athletic Association, Inc., and Mary Keefer, in her capacity as Principal of Bishop Luers High School, Appellants–Defendants,

v.

Jessah MARTIN, Appellee–Plaintiff.

No. 02A05–0005–CV–178.

Court of Appeals of Indiana.

Dec. 29, 2000.

Robert M. Baker III, Johnson, Smith, Pence & Heath, LLP, Indianapolis, Indiana, Attorney for Appellants.

Edward L. Murphy, Jr., Stefanie R. Crawford, Miller Carson Boxberger & Murphy, LLP, Fort Wayne, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Indiana High School Athletic Association, Inc. (IHSAA), appeals the trial court's judgment ordering it to pay attorney fees to Edward L. Murphy, Jr. and Stefanie Crawford, attorneys for Jessah Martin, the Appellee, for prosecuting a contempt action against the IHSAA. Our opinion in this matter is a companion deci-

sion to the opinion in the contempt action, also issued today.

Upon appeal, we restate the issues raised by the Appellant as follows:

(1) Whether a trial court may order payment of attorney fees based upon a finding of contempt;

(2) Whether a trial court may order attorney fees as an additional sanction for contempt; and

(3) Whether a trial court may order payment of attorney fees requested by a party in his or her initial petition alleging contempt, when that party fails to present evidence as to such fees at the contempt hearing.

We affirm.

### I. Facts and Procedural History

This appeal represents the fourth appeal arising out of the issuance of a preliminary injunction against the IHSAA and in favor of Martin.[1]

As the facts are fully set out in the companion opinion, it is unnecessary for them to be restated here. Suffice it to say, as an adjunct to her petition for contempt, Martin requested "reasonable attorney fees in bringing [the] action for [c]ontempt." Record at 283.

On January 5, 2000, the trial court held a hearing on Martin's petition for contempt. At the hearing, Martin contended that by failing to waive the Restitution Rule,[2] the IHSAA had in effect produced

1. The IHSAA and its former Commissioner Bob Gardner appealed the propriety of the preliminary injunction in Appeal No. 02A03–9912–CV–460. This court upheld the trial court order granting the preliminary injunction. *Indiana High School Athletic Ass'n, Inc. v. Martin* (2000) Ind.App., 731 N.E.2d 1. The IHSAA's request for rehearing was denied. Transfer of this appeal to the Indiana Supreme Court is currently pending. In the second appeal, Mary Keefer, principal of Bishop Luers High School, also appealed the preliminary injunction in Appeal No. 02A05–9912–CV–574. This appeal was subsequently dismissed. In the third appeal, the IHSAA appealed the trial court's January 21, 2000 order finding it in contempt of the preliminary injunction and imposing a monetary as-

sessment in Appeal No. 02A03–0001–CV–029. In a separate opinion issued today, we conclude that the trial court did not abuse its discretion in finding the IHSAA in contempt of the preliminary injunction or in imposing the assessment. *Indiana High School Athletic Ass'n, Inc. v. Martin* (2000) Ind.App., 741 N.E.2d 757.

2. Rule 17–6, known as the Restitution Rule, addresses situations where a student athlete participates pursuant to court action. This rule allows the IHSAA to require that a school vacate individual or team records and performances, forfeit team victories to opponents, return team or individual awards, and/or forfeit the school's share of net receipts received from any IHSAA tournament series wherein

the same result as if it had enforced its limited junior varsity eligibility decision under the Transfer Rule. IHSAA Assistant Commissioner Theresia Wynns, testifying on behalf of Martin, stated that school officials would consider the Restitution Rule in their decisions to play student athletes and that the Restitution Rule would have a detrimental effect on Luers' decision to play Martin. Wynns further testified that the value of assets held by the IHSAA at the time of the hearing was $7,363,357.77, and that the IHSAA had cash assets of $279,611.86.

Gary Andrews, the girls' basketball coach at Luers, testified that Martin had the athletic talent to participate on the Luers varsity girls' basketball team, a team that was currently "eleven and 0". Record at 508. Harry Miller testified for Martin concerning how Martin's "outlook" improved after the preliminary injunction was issued and her disappointment once she realized she might never have the opportunity to play. Record at 520.

At the close of testimony, the following colloquy between the trial court and Martin's counsel took place:

COURT: Okay, you may step down. Any other witnesses?

MR. MURPHY: No, not unless, I would assume that the Court would do one of two things, in the event that the evidence is sufficient to hold the Defendant, the IHSAA in contempt, would set a reasonable attorney fee based upon the Court's experience, or that the attorney fees would be delayed, referred to another date. If it is not, I will present evidence on that.

COURT: Alright, no other witnesses then?

MR. MURPHY: I have no other witnesses. Record at 524.

The trial court did not request that Murphy proceed at that time to present evidence concerning attorney fees and instead heard closing remarks from counsel. The trial court took the issue of contempt under advisement and on January 21, 2000, issued its Order or Judgment of the Court (Contempt Judgment).

In its Contempt Judgment, the trial court held that the IHSAA was in contempt, and found that the injunction was specific, that the IHSAA had actual knowledge of the injunction, that the IHSAA purposefully and knowingly violated the terms of the injunction, and that this violation took place during the time the injunction was in effect. The trial court specifically found that "the IHSAA has willfully and contemptuously disregarded its Order by forcing Bishop Luers High School to comply with the IHSAA's original decision that Jessah Martin is ineligible to participate in varsity interscholastic athletics." Record at 308. The trial court also concluded that Martin had suffered both emotional and financial harm and assessed the IHSAA $500.00 per day for so long as it remained in contempt. However, the trial court allowed the IHSAA to purge itself of contempt by specifically waiving the Restitution Rule as it pertained to Martin.

A few weeks after the Contempt Judgment, on February 8, 2000, Martin filed a verified motion for attorney fees requesting that the trial court determine the amount of attorney fees Martin incurred and would continue to incur as a result of the contempt proceedings. On February 25, 2000, Martin filed a verified supplemental motion for attorney fees requesting attorney fees through March 3, 2000, the date of the attorney fee hearing.

At the fee hearing, Martin contended that the assessment against the IHSAA included in the Contempt Judgment did not amount to an award of attorney fees

the student athlete participated, if the student is found ineligible to participate under IHSAA Rules but is permitted to participate pursuant to a court restraining order or injunction and that restraining order or injunction is later reversed, vacated or stayed or if there is a determination that injunctive relief is or was not justified.

and that an additional assessment, for attorney fees, would be proper. The IHSAA responded that an assessment of attorney fees would be penal rather than coercive or remedial, that the request for attorney fees had been considered in the trial court's original assessment, and that Martin's request for attorney fees was waived because she failed to present proof of attorney fees at the contempt hearing. During the fee hearing, attorney Edward L. Murphy, Jr. testified concerning the hours spent by himself and attorney Stefanie Crawford from December 14, 1999, through the month of February, 2000, in dealing with the contempt issue. Attorney Murphy also presented evidence to support his request that the hourly rate for services rendered by him be $175.00 per hour and the hourly rate for services rendered by attorney Crawford be $150.00 per hour.

On March 24, 2000, the trial court entered its Order or Judgment of the Court (Fee Judgment) which contained specific findings that "[t]he Court's Order [dated January 21, 2000] did not include an award for attorney fees" and was instead "based upon the financial harm suffered by Martin in lost opportunities,"[3] that Martin had reasserted her request for attorney fees in her motions for attorney fees, and that "[t]he IHSAA's response is exclusively agrument [sic], failing to provide any supporting citations or authority." Record at 335–36. The Fee Judgment awarded attorney fees to attorney Murphy in the amount of $1,050.00 and to attorney Crawford, at the reduced rate of $100.00 per hour, for a total amount of $760.00. On April 24, 2000, the IHSAA filed its praecipe for appeal.

Indiana follows the "American Rule" which provides that each party to litigation pay his or her own attorney fees, absent a statute, agreement, or stipulation to the contrary. *Crowl v. Berryhill* (1997) Ind.App., 678 N.E.2d 828, 831. Indiana Code 34-26-1-15 (Burns Code Ed. Repl. 1998) provides for an award of attorney fees in an action to enforce an injunction.[4] Furthermore, trial courts have authority to award attorney fees in civil contempt proceedings. *Crowl, supra* at 831; *Cowart v. White* (1999) Ind., 711 N.E.2d 523, 533, *clarified in* 716 N.E.2d 401.

The IHSAA initially contends that because the trial court abused its discretion by finding the IHSAA in contempt of the preliminary injunction, the trial court also abused its discretion in ordering the IHSAA to pay the attorney fees Martin incurred in preparing and prosecuting the contempt proceedings. Essentially, the IHSAA asserts in this argument the same argument concerning propriety of the Contempt Judgment that it asserts in Appellate Case No. 02A03–0001–CV–29. We have already concluded that the trial court did not abuse its discretion in finding the IHSAA in contempt of its preliminary injunction. *See Indiana High School Athletic Ass'n, Inc. v. Martin* (2000) Ind.App., 741 N.E.2d 757.

The IHSAA also contends that the trial court abused its discretion in ordering it to pay Martin's attorney fees both because the attorney fees would be an "*additional* sanction for the *very same alleged contempt*" and because Martin waived her right to attorney fees by failing to raise the attorney fees issue at the contempt

---

3. In our companion opinion we noted that the $500.00 daily assessment could not be justified as monetary compensation for Martin's damages. We held, however, that the coercive nature of the assessment validated the award.

4. In *Trotcky v. Van Sickle* (1949) 227 Ind. 441, 447, 85 N.E.2d 638, 641, our Indiana Supreme Court held that the language of Indiana Code 3–2115 (Burns Code Ed. Repl. 1946) which stated that "the court shall also take all necessary measures to secure and indemnify the plaintiff against damages in the premises," included reasonable attorney fees that were paid or incurred in connection with the contempt proceedings. Indiana Code 34–26–1–15 (Burns Code Ed. Repl. 1998) now embodies this pertinent section of Indiana Code 3–2115.

hearing and by "failing to introduce evidence of fees at the Contempt Hearing."[5] Appellant's Brief at 11–12, 15, 27–8 (emphasis in original). We address each contention in turn.

■ The thrust of the IHSAA's first argument is that because the trial court initially assessed the IHSAA $500.00 per day, which amounted to a sanction for its contemptuous behavior, the trial court should not be permitted to punish it again for the same contemptuous behavior by awarding attorney fees. In contempt proceedings, the trial court has discretion to determine damages, including attorney fees. *Meade v. Levett* (1996) Ind.App., 671 N.E.2d 1172, 1181.

Here, however, notwithstanding the trial court's designation, the $500.00 per day assessment against the IHSAA may not be held to represent compensatory damages to Martin. In the companion case of *Indiana High School Athletic Ass'n, Inc. v. Martin* (2000) Ind.App., 741 N.E.2d 757 also issued today, we held that the findings contained in the trial court's Contempt Judgment concerning Martin's financial damages from lost scholarships were erroneous and that the assessment was not remedial. However, we further held that the assessment imposed by the Contempt Judgment was coercive in nature and that the trial court did not abuse its discretion when it imposed the assessment against the IHSAA. Similarly, the trial court found, in its Fee Judgment, that the Contempt Judgment assessment was based upon financial harm. Although this Fee Judgment finding was also erroneous, it is not determinative of our holding in this case as the judgment otherwise supported. *Robertson v. Board of Zoning Appeals, Town of Chesterton* (1998) Ind.App., 699 N.E.2d 310, 315.

■ In its Fee Judgment, the trial court found that the Contempt Judgment did not include an award of attorney fees. In our companion case, we concluded that the $500.00 assessment against the IHSAA was coercive in nature and designed to compel the IHSAA to comply with the preliminary injunction. The IHSAA directs us to no evidence in the record, and our own search reveals no such evidence, to support its contention that the contempt Judgment "presumably included" attorney fees. Appellant's Brief at 11. At the contempt hearing, although the issue was clearly preserved, the trial court had no evidence before it concerning the amount of attorney fees Martin's attorneys had incurred up until that time. It was not until the subsequent fee hearing that evidence was presented of the hours spent preparing and prosecuting the contempt action and of the reasonable hourly rate of compensation for her attorneys. Thus, the $500.00 assessment could not have represented an award of attorney fees. Furthermore, based upon the discussion between attorney Murphy and the trial court, it is clear that the trial court deferred the issue of attorney fees. Finally, because the assessment in the Fee Judgment was remedial, in that it compensated Martin for the attorney fees she incurred as a result of the contempt proceedings, the Fee Judgment was not duplicative of the $500.00 assessment, which was coercive.[6]

---

**5.** Initially, we observe that upon appeal the IHSAA fails to cite to any legal authority in support of these two arguments. *See* Ind. Appellate Rule 8.3(A)(7). Rather, the majority of both the IHSAA's initial and reply briefs is dedicated to the IHSAA's argument that the trial court abused its discretion by finding the IHSAA in contempt of the preliminary injunction. That contention is the issue decided today in Appellate Cause No. 02A03–0001–CV–029. However, because this failure does not impede our ability to efficiently review the

case, we will determine each issue on its merits. *Matter of E.H.* (1993) Ind.App., 612 N.E.2d 174, 191, *adopted in* 624 N.E.2d 471.

**6.** The IHSAA finds it significant that Martin's Verified Request for Attorney Fees alleged continuing contempt by the IHSAA and that Martin failed to present evidence of continuing contempt at the fee hearing. The IHSAA thus concludes that the award of attorney fees was an additional, and thereby inappropriate, sanction for the same *original* contempt for

See *Crowley v. Crowley* (1999) Ind.App., 708 N.E.2d 42, 52 (finding that sanctions imposed in contempt proceedings must be coercive or remedial in nature).

We further find that Martin did not waive her right to attorney fees for failing to raise the issue and present evidence of the fees at the contempt hearing. The IHSAA contends that Martin failed to raise the attorney fee issue at the contempt hearing and that she waived "any right" to attorney fees "by failing to introduce evidence of fees at the Contempt Hearing." Appellant's Brief at 28. This argument is both legally and factually incorrect. In *Stepp v. Duffy* (1995) Ind. App., 654 N.E.2d 767, 775, *reh'g denied, trans. denied,* this court determined that the plaintiffs in a fraud suit did not waive their claim for attorney fees by not presenting evidence of the fees at trial because they included a timely request for the fees in their initial complaint.

Like the plaintiffs in *Stepp,* Martin requested attorney fees in her initial petition for contempt. She also raised the issue of attorney fees during the contempt hearing and offered to present evidence of the fees at that time. It is clear from the discussion between the trial court and Murphy that the trial court preferred that evidence regarding attorney fees be presented at a subsequent hearing. Thus, after the trial court issued its Contempt Judgment, Martin again requested attorney fees. The evidence clearly supports the trial court's finding that "[t]he request of attorney's fees was properly before the Court and was not waived." Record at 336. Having addressed the IHSAA's arguments and in

light of the fact that the IHSAA does not challenge the amount of the attorney fee award, we conclude that the trial court did not abuse its discretion by awarding Martin attorney fees.

The judgment is affirmed.

BAILEY, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting

Because I believe that the trial court erred in holding the IHSAA in contempt in the companion case issued today, I also conclude that the trial court erred in awarding Martin attorney fees.

---

which the IHSAA had already been sanctioned in the Contempt Judgment. While Martin does allege continuing contempt, her motions sought recovery for the attorney fees she incurred as a result of the contempt proceedings from December 14, 1999, through March 3, 2000, and Martin presented evidence in support of her requests. Under the IHSAA rules, Martin became eligible for varsity level athletics on February 16, 2000. Because the preliminary injunction was effective only for as long as the original IHSAA decision would have held Martin to limited eligibility, the preliminary injunction terminated on February 16, 2000. Accordingly, the IHSAA was not in "continuing" contempt at the time of the March 3, 2000 hearing, even though it had continued to be in contempt up to February 16, 2000. Regardless of whether the IHSAA continued to be in contempt, Martin was entitled to attorney fees incurred as a result of preparing and prosecuting the contempt action against the IHSAA.