## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 29 2020, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce N. Munson
Law Office of Bruce N. Munson, P.C.
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Wayne Handshoe,

*Appellant-Respondent,*

v.

Commissioner of the Indiana
Department of Environmental
Management,

*Appellee-Petitioner,*

December 29, 2020

Court of Appeals Case No.
20A-PL-200

Appeal from the Delaware Circuit
Court

The Honorable Linda Ralu Wolf,
Judge

Trial Court Cause No.
18C03-1503-PL-6

**Robb, Judge.**

# Case Summary and Issue

[1] In 2015, the Indiana Department of Environmental Management ("IDEM") brought an action against Wayne Handshoe to compel Handshoe to clean up and remediate a site where Handshoe operates an auto salvage business. In 2016, the parties entered into an agreed judgment which stipulated, in part, that Handshoe pay a $10,250 civil penalty and complete and submit a site assessment plan ("SAP") to IDEM within thirty days of the agreed judgment. Because Handshoe had yet to pay any of the civil penalty or submit the SAP by mid-2019, he was found in contempt on November 8, 2019, and ordered to be incarcerated for seven days unless he paid the entire civil penalty of $10,250 by December 31, 2019.

[2] Handshoe now appeals, raising two issues which we restate as: (1) whether the trial court erred by finding him in contempt for failure to pay the civil penalty; and (2) whether the trial court's order that Handshoe be incarcerated unless he paid the civil penalty was punitive or coercive. We conclude that the trial court erred by finding Handshoe in contempt for failure to pay the civil penalty because money judgments are not enforceable by contempt. Also, we conclude that although Handshoe was in contempt for failure to submit the SAP, the trial court's sanction was punitive rather than coercive and thus impermissible. Accordingly, we reverse the order of contempt in part and remand with instructions for the trial court to impose a contempt sanction consistent with this opinion.

# Facts and Procedural History

[3] Handshoe owns Westside Auto Parts, an automobile parts salvage business, on property in Muncie that he purchased in 2002. Prior to Handshoe owning the property it was used as an automobile recycling center. Handshoe currently uses the property to sell tires and store cars which will be salvaged. Handshoe testified that he currently has cars on the property that can be crushed and tires that can be sold and that when the price for the cars was right,[1] he intended to have a company come in and crush the vehicles. *See* Appellate Transcript, Volume 2 at 46.

[4] IDEM conducted inspections on Handshoe's property in May 2010, August 2012, and December 2012 and concluded that Handshoe had allowed "automotive fluids" and "shredder fluff" to be released into the environment. Appellant's Appendix, Volume 2 at 20. On February 27, 2013, IDEM issued a notice of violation which contained an offer to enter into an agreed judgment that would detail actions required to correct Handshoe's violations. In 2014, IDEM issued an order to Handshoe requiring him, in part, to take immediate steps to capture any potential release of fluid during crushing activities, remove all mercury switches from all vehicles, and submit and implement an approved

---

[1] Handshoe states that the price of steel is around "$60 a ton []" but has "been up to $250 and $275 higher." Appellate Transcript, Volume 2 at 46. He did not specify what price point he is looking for.

SAP. *See id.* at 19. IDEM then filed a verified petition for civil enforcement in 2015, seeking the trial court's assistance to enforce the 2014 order.

[5]     On March 15, 2016, Handshoe and IDEM entered into an agreed judgment which required, in relevant part, that Handshoe file an SAP and pay a civil penalty of $10,250 to IDEM. *See id.* at 23, 27. Handshoe hired an environmental consultant for purposes of preparing the SAP; however, Handshoe never filed an SAP and never paid any of the civil penalty. On April 15, 2019, the court granted Handshoe a sixty-day extension of time to file the SAP; pursuant to this order Handshoe was required to comply with the agreed judgment and submit the SAP by June 14.

[6]     On July 3, 2019, IDEM filed its Renewed Motion for Rule to Show Cause asking the court to find Handshoe in contempt because of his failure to submit the SAP report and failure to pay the civil penalty. The trial court held a show cause hearing on October 9, 2019, during which Handshoe argued that he was in debt and could not comply with the trial court's order. In support of this argument, Handshoe claimed that his income only included social security, a General Motors pension, and "[a] little" income from his auto parts store. Tr., Vol. 2 at 46. Handshoe further testified that his income had not been high enough to pay income taxes for the prior four years and that he has a line of credit with Wells Fargo Bank and owes them $25,000. Handshoe did not present any documentation of his finances to support his claims. *See id.* at 48-49.

[7]     The trial court issued an Order of Contempt of Court on November 8, 2019, finding Handshoe in contempt for failing to submit the SAP report and pay the civil penalty as ordered in the agreed judgment and the trial court's April 15, 2019 order. The trial court determined that Handshoe had "the means to obtain sufficient funds to pay the civil penalty." Appealed Order at 4. The trial court ordered Handshoe to be incarcerated for seven days as a sanction for his contempt but suspended that order on the condition that Handshoe pay the $10,250 civil penalty by December 31, 2019. Handshoe filed a motion to correct error on December 9, claiming that the trial court improperly determined he had sufficient assets to pay the civil penalty such that he willfully disobeyed the court's orders and that the incarceration order violated Article 1, section 22 of the Indiana Constitution. The trial court denied Handshoe's motion. Handshoe now appeals.

# Discussion and Decision

## I.  Standard of Review

[8]     A party that is willfully disobedient to a court's order may be held in contempt of court. *Witt v. Jay Petroleum, Inc.,* 964 N.E.2d 198, 202 (Ind. 2012). The determination of whether a party is in contempt of court is a matter left to the discretion of the trial court. *City of Gary v. Major*, 822 N.E.2d 165, 171 (Ind. 2005). Upon review, we will reverse the trial court's determination only where an abuse of discretion has been shown. *Meyer v. Wolvos,* 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied.*  An abuse of discretion occurs when the trial

court's decision is against the logic and effect of the facts and circumstances before it. *Id.* In reviewing a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *Srivastava v. Indianapolis Hebrew Congregation, Inc.,* 779 N.E.2d 52, 60 (Ind. Ct. App. 2002), *trans. denied.*

## II. Contempt

Handshoe argues that the trial court erred by finding him in contempt for failing to pay the civil penalty included in the agreed judgment.[2] We agree.

Under Article 1, section 22 of the Indiana Constitution, "[t]he privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted: and *there shall be no imprisonment for debt*, except in case of fraud." (Emphasis added.) Our supreme court has carved out an additional exception in the case of enforcement of child support orders but has otherwise reaffirmed the principle that money judgments are not enforceable by contempt. *See Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993): *see also Allee v. State*, 462 N.E.2d 1074, 1075 (Ind. Ct. App. 1984) ("Indiana law is clear in that money judgments are generally enforced by execution. Various other collateral and auxiliary remedies are

---

[2] Handshoe does not contest the portion of the contempt order finding him in contempt for failure to submit the SAP.

available for the enforcement of money judgments, but contempt of court is not one of these.") (internal citation omitted).

[11] Here, Handshoe entered into an agreed judgment with IDEM which provided, in part, that he pay a civil penalty of $10,250. Agreed judgments are both contractual, in that they agreements between the parties settling the underlying dispute, and entries of judgment by the court. *Brugh v. Sailors*, 130 N.E.3d 149, 154 (Ind. Ct. App. 2019). We have held that any order that requires the payment of a sum of money and states the specific amount due, whether labeled as a mandate or a civil money judgment, is a "judgment for money." *Hilliard v. Jacobs*, 916 N.E.2d 689, 695 (Ind. Ct. App. 2009), *trans. denied*. Thus, the portion of the agreed judgment requiring Handshoe to pay a civil penalty constitutes a money judgment for which he cannot be found in contempt. Therefore, the trial court erred in holding Handshoe in contempt for failing to pay the civil penalty.

## III. Sanction

[12] The trial court erred in finding Handshoe in contempt for failure to pay a money judgment; however, the trial court's contempt finding for failure to submit the SAP remains valid. Handshoe does not challenge the trial court's finding of contempt for his failure to submit the SAP, but he argues that the trial court's sanction of incarceration, suspended on the condition that he pay the previously imposed civil penalty of $10,250, was improper because it was punitive in nature rather than coercive. We agree.

[13] In a civil contempt proceeding, the primary objective is not to punish the defendant but to coerce action for or to compensate the aggrieved party. *Reed v. Cassady*, 27 N.E.3d 1104, 1114 (Ind. Ct. App. 2015), *trans. denied*. In such cases, imprisonment may be imposed to coerce compliance with a court order. *Id.*; *see also Duemling,* 243 Ind. at 525, 188 N.E.2d at 276 ("In a civil contempt action [any] fine [imposed for contempt] is to be paid to the aggrieved party, and imprisonment is for the purpose of coercing compliance with the [original] order.").

[14] To avoid being purely punitive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt. *Reed*, 27 N.E.3d at 1114. Here, Handshoe was found in contempt for failure to submit the SAP and failure to pay a civil penalty. Handshoe was ordered to be incarcerated for seven days, suspended upon the payment of $10,250 by a certain date. Above we concluded that the trial court erred by finding Handshoe in contempt for the failure to pay the civil penalty. Therefore, we evaluate the trial court's contempt sanction only with regard to Handshoe's failure to submit the SAP. We conclude that the incarceration has no coercive effect because it is suspended on a payment of $10,250 rather than the completion of the SAP. *Cf. Duemling,* 243 Ind. at 525, 188 N.E.2d at 276 ("The order of the court that [a party] be committed to jail for contempt until he complies with the original order is not punitive but coercive.").

[15] Further, the $10,250 purge is an improper punishment for failure to complete the SAP. Generally, "[o]nce a party is found to be in contempt, monetary

damages are permitted to compensate the other party for injuries resulting from the civil contempt." *Hancz*, 691 N.E.2d at 1326. Elements which can be considered in assessing damages are the inconvenience and frustration suffered by the complaining party. *Id.* Here, $10,250 does not represent damages owed by Handshoe to compensate IDEM for the inconvenience and frustration caused by his failure to complete the SAP. It is the amount of the civil penalty levied by IDEM which Handshoe has yet to pay. The trial court suspending incarceration upon the payment of this civil penalty does not compensate IDEM for injuries incurred by Handshoe's failure to complete the SAP; rather it punishes Handshoe for having failed to pay the civil penalty. *See id.* (holding a $2,200 fine in lieu of incarceration was not compensation but an alternate punishment for past acts). Although the trial court did not err in finding Handshoe in contempt for failing to submit the SAP, the sanction for that contempt is improperly punitive.[3]

# Conclusion

[16] We conclude the trial court abused its discretion by finding Handshoe in contempt for failure to pay a money judgment. We also conclude that the trial court's sanction of incarceration, suspended upon the payment of $10,250, for failing to submit the SAP was punitive in nature rather than coercive and thus,

---

[3] Because we hold that Handshoe cannot be found in contempt for failure to pay the civil penalty, and reverse the sanction ordering him to do so, we need not address Handshoe's argument that he did not have sufficient assets to pay.

not proper for a civil contempt sanction. Accordingly, we reverse the trial court's sanction and remand with instructions for the trial court to impose a sanction that is coercive in nature.

[17] Reversed and remanded.

Crone, J., and Brown, J., concur.